EJECTMENT.      ## Marmaduke, &c. *vs* Tennant's Heirs.

*Case* 42.              APPEAL FROM THE GENERAL COURT.

*Ejectment.   Amendments.   Division of Lands.   Sale of
land under execution.   Judgment.*

October 13.     JUDGE BRECK delivered the opinion of the Court.

UPON the demise of sundry persons, claiming to be the
heirs of John Tennant, deceased, a judgment in eject-
ment was recovered against the appellants, from which
they have appealed to this Court.

The facts and law of the case, as ruled by the Court,
are presented in bills of exceptions.

Previous to the trial the Court permitted the plaintiff,
on motion, to amend his declaration by striking out
one hundred and ninety-five and inserting two thousand
acres, to which the defendants objected.   The propriety
of permitting this amendment is the first question we
shall notice.

The practice of permitting the demise in declarations
of ejectment to be amended has long been indulged.   Nu-
merous cases are found in the English authorities where
the plaintiff has been permitted to add a new demise
long after the institution of his suit, and even to amend
the demise after judgment.   Nonsuits, resulting from a
mistake in the demise, have been set aside, and the plain-

tiff, by amendment, permitted to correct the mistake. Similar indulgence has also been extended by the judiciary of New York. In 1st *Caines*, 251, the plaintiff was permitted to add a new demise, six years after the service of the declaration.

This Court has sanctioned the practice of permitting the demise, before trial, to be amended by extending it and changing its date, but we are aware of no case in which an amendment as to the quantity, boundary or description of the land has been indulged. All amendments must depend upon the exercise of a sound discretion by the Court, and must be made upon such terms and conditions as it may be just and reasonable to impose. It is not, we think, to be deprecated that Courts at law have manifested an increasing liberality in allowing amendments to obviate technical objections and to secure a fair trial upon the merits. But the amendment in this case is not in reference to the mode or form of proceeding, but is one of substance. It enables the plaintiff to include in the contest more land than he originally sued for; and we should not be inclined to indulge amendments of the kind, except upon such terms as a just regard to the rights of defendants might require. But as it is apparent that the amendment in question did no injustice to the defendants, nor operate to their prejudice, we are not prepared to say that there was any abuse of discretion by the Court in permitting it, and consequently we are of opinion, that it is no cause for disturbing the judgment.

Among other documentary testimony introduced by the defendants upon the trial, were two deeds for one hundred and ninety acres of the land in controversy; one of the deeds made by the late, the other by the present United States Marshal for the district of Kentucky, and both deeds made in virtue of the same sale.

They also introduced a report, made by Commissioners appointed by the County Court of Oldham, under the act of 1792, for the divison of lands held by citizens of Kentucky and non-residents in conjunction, of the division of a tract of land of which the tract in controversy

*Marginal notes:*

MARMADUKE &c. vs TENNANT'S H's.

It was no abuse of the discretion of the Circuit Court to permit the plaintiff to amend his demise, by striking out one number of acres and inserting a greater, *as no injury resulted* to the defendant therefrom.

A sale of 190 acres, part of a tract of 600, by an officer under execution, without other designation, is void for uncertainty.

MARMADUKE &C.
*vs*
TENNANT'S H'S.

was part, between one William D. White and a part of the lessors of the plaintiff.

The Court instructed the jury, that neither the deeds nor the County Court division furnished any obstacle to the plaintiff's recovery. The correctness of that instruction is questioned by the counsel of the appellants, and will be now considered.

The sale was made by the Marshal in 1825, in virtue of sundry executions, which were issued by the Clerk of the District Court of the United States for Kentucky, against all the lessors of the plaintiff in this case, as the heirs and representatives of John Tennant, deceased. The executions had been levied upon a tract of six hundred acres, in the county of Oldham, as the land of the defendants, and which included all the land in controversy in this suit. The Marshal returns that Lawrence Young undertook and agreed to pay off the whole amount of all the executions, for 190 acres of said land, and no person offering to pay the same for a less number of acres, it was stricken off to said Young. Presuming that the Marshal had authority to levy and sell lands under execution, in the mode pointed out by the statutes of Kentucky, the question arises whether the sale in question was so made. The third section of the statute of 1798, authorizing and prescribing the mode of selling lands under execution, and which was in force when this sale was made, authorized the officer, if there were no goods, chattels or slaves, of which to make the debt, "lastly to sell the lands, tenements and hereditaments in possession, reversion or remainder, or so much thereof, in one or more entire parcels, as shall be sufficient, and such parts as the owner shall direct, if he thinks proper:" (1 *Littell and Swigert's Digest*, 513–14.) The Marshal in this case sold 190 acres of the 600, but without designating how or where it was to be laid off. It was an undivided 190 acres, in the tract of 600. Neither the Marshal nor the purchaser, after the sale, had any right or authority to locate it. Such a sale was not, we think, authorized by law. The statute is express in requiring it to be "laid off in one or more entire parcels," and authorizes a sale in no other way. This Court has always

been inclined to sustain sales under execution, fairly made, and apparently in compliance with the requisitions of the law; and hence it has been decided that the purchaser was not bound by irregular acts in the officer, in which he did not participate. That a sale ought not to be held invalid merely because the officer had failed in the discharge of a portion of his duty in relation to it, which was directory and in particulars, of which the purchaser was ignorant, such as a failure on the part of the officer to give the requisite notice, to have the land valued, &c.: *Cox* vs *Nelson*, (1 *Marshall*, 94,) and cases there cited. But on the other hand, it has been held that although the purchaser ought not to have his title impeached by irregularities of the officer, in which he had no concern, and of which he was ignorant, yet that he was bound to look to the authority under which the officer acts, and if that fails in the officer, the purchaser can acquire no title; and upon this principle sales have been declared void, when the land sold for more money, or in other words, where more land was sold than was sufficient to satisfy the execution: *Patterson* vs *Carneal's heirs*, (3 *Marshall*, 619.) In the case before us, the law authorized a sale of so much of the land of the defendant, "laid off in one or more entire parcels," as was sufficient to discharge the executions. The purchaser saw and knew that the sale was not made as the law required, for he is presumed to know the law. There was no difficulty in selling so much of the tract or the interest of the defendants in so much of the tract, to be laid off in a particular part thereof, as would satisfy the executions; and as the sale was not thus made, and as there was no designation whatever, of the portion sold, we think it was unauthorized and void.

In reference to the division by the Commissioners, it appears that the division was made at the instance of William D. White, in 1828, but the report thereof not made to the Court and recorded till 1831. White *claimed* the benefit of the purchase by Young, at the Marshal's sale, and also the interest of John Tennant, one of the lessors, in the whole tract of 600 acres, and which interest had been conveyed to Young, in 1823. The Commis-

sioners first laid off to White the 190 acres, purchased by Young at the Marshal's sale, and then divided the residue of the tract into seven parts, there having been that number of Tennant's heirs, and allotted one of them also to White. This division, we think, was invalid, and entitled to no consideration by the jury:

1st. Because it was but a partial division of the whole tract.

2d. And more especially, because there is no competent nor satisfactory testimony that White had such an interest in the tract as authorized the proceeding and division; and we are further of the opinion, that there is not evidence of such a subsequent recognition of the division by the lessors, as to render it binding upon them.

It results, therefore, that the Court correctly instructed the jury, that neither the Marshal's deed, nor the County Court division, nor the supposed acts of confirmation thereof by the lessors of the plaintiff, formed any obstacle to the plaintiff's recovery.

The judgment in ejectment should conform to the verdict of the jury. The only remaining question is in reference to the verdict and judgment. The jury found "the defendants guilty as to five-sevenths, except as to a designated portion of the tract, as to which they found them not guilty."

The judgment is for the whole tract, and is, therefore, as has been repeatedly decided by this Court, unauthorized and erroneous.

Wherefore, the judgment is reversed and the cause remanded, with directions to enter a judgment in conformity with the verdict.

*Loughborough* for appellants; *Cates & Lindsey* for appellees.