## Dunn v. Blue Grass Realty Company.

(Decided March 9, 1915.)

### Appeal from Madison Circuit Court.

1. New Trial—When Will Be Granted.—Where the damages can be measured, and the verdict of the jury is such as to demonstrate that the proof was disregarded, and the law of the case as embodied in the instruction, was disobeyed, a new trial will be granted.

2. Judgment—Must Follow and Conform to Verdict.—A judgment must follow and conform to the verdict, not only as to the amount of the recovery, but also as to the nature and measure of relief and as to the parties; and, it cannot go beyond the verdict in settling the rights of the parties or admeasuring the recovery, or declaring or foreclosing liens, except that in cases where the evidence would have authorized the court to direct a verdict, it may, in rendering judgment, go further than the verdict in adjusting the equities of the parties.

3. Trial.—Although the general rule is, that where the amount is not actually in issue, a simple finding for the plaintiff, or the defendant, is usually sufficient without specifying any particular sum, this rule does not apply where the jury goes further and finds for the plaintiff a specific erroneous sum in damages.

4. Trial—Verdict—When Should Be Set Aside—Instructions.—Where a jury specifies the amount of its finding, which is erroneous under

the instructions, the court is not justified in entering a judgment for a different amount, since, in that case, the judgment would not conform to the verdict, but would depart from it. In such a case all the court can do is to set aside the verdict as being contrary to the law of the case as contained in the instructions.

5. New Trial—When Will Not Be Granted—Newly Discovered Evidence.—A new trial will not be granted upon the sole ground of the discovery, after verdict, of parol testimony concerning a point litigated, or a fact known to the party; but, when the newly discovered evidence is of such a permanent and unerring character as to preponderate greatly, or have a decisive influence upon the verdict to be overturned by it, a new trial will be granted.

GRANT E. LILLY for appellant.

COBB & COLLINS and C. C. WALLACE for appellee.

Opinion of the Court by Chief Justice Miller— Reversing.

The appellant, Butler Dunn, is a farmer, and, at the times hereinafter stated, he owned a farm of 134 acres in Madison County, upon which he resided. The defendants, Jesse Cobb and J. Tandy Eads, do a real estate business under the name of the "Blue Grass Realty Company."

In July, 1912, Dunn listed his farm with the defendants for sale, at a minimum price of $85.00 per acre. A few days thereafter appellees, through Eads, who acted for his company throughout these negotiations, reported to Dunn that they had a prospective purchaser, whose name he declined to disclose, but that the purchaser would not give as much as $85.00 per acre. At that price the farm would have sold for $11,421.45.

Upon due consideration, and after Eads had stated to Dunn that the purchaser had grown indifferent and cold, Dunn authorized appellees to sell the farm for $10,500.00.

Shortly thereafter Eads again reported to Dunn that the prospective purchaser was still cold and indifferent, but that they believed the purchaser would take the farm at $10,500.00, if Dunn would "throw in" the crops then growing on the farm. Dunn finally agreed to do that; and, when he went to appellees' office on July 11th to close the sale, he was informed that appellee Cobb was the purchaser. The contract of sale was reduced to writing on the morning of July 11th; and the deed was then

drawn and executed and delivered by Dunn and wife on the afternoon of the same day. Cobb and Eads retained the usual commission of $210.00, or 2 per cent of the purchase price, and paid Dunn the remaining $10,290.00.

It developed later, however, that the prospective purchaser to whom Eads referred was May Collins, and that Collins was willing to buy the Dunn farm at $85 per acre, or a total of $11,421.45, provided he could buy an adjoining strip of about 20 acres from Phelps. Jake Collins, representing May Collins, and Eads, of the defendant firm, undertook to persuade Phelps to sell the twenty-acre strip to Collins; but Phelps, at first, refused. Finally, however, Phelps agreed to sell Collins the 20 acres at $100.00 per acre; whereupon, Collins closed the contract with the appellees and bought the Dunn farm from Cobb, at the price of $11,421.45, or $85.00 per acre. During the negotiations Collins thought he was to buy from Dunn.

As above stated, Dunn's deed to Cobb was executed on the afternoon of July 11th, 1912. Cobb's deed to Collins was dated the next day; and, in closing the two transactions, Cobb gave his check upon a bank in which he had no funds, under an agreement with the bank that his check to Dunn should be paid with the proceeds of Collins' check to Cobb, it being supposed that, in the ordinary course of business, Cobb's check would not reach the bank until after Collins' check had been collected. This proved to be true, and there was no overdraft made by Cobb, although the precaution had been taken against that contingency.

Shortly thereafter Dunn brought this action to recover from Cobb and Eads the sum of $1,131.45, the difference between the sum of $11,421.45, which Cobb received from Collins for the Dunn farm, and $10,290.00, the net purchase price which Cobb paid to Dunn for the farm, upon the theory that Cobb was acting as the agent of Dunn throughout the entire transaction, and that Dunn was entitled to the profit which Cobb had made in making the sale.

The case was tried three times before a jury. Upon the first trial the jury failed to agree; upon the second trial Dunn obtained a verdict for $500.00, but the court set aside the judgment thereon because the verdict was contrary to the evidence and the instructions of the court, which required the jury to fix its verdict at $1,131.45, in

case it found for Dunn. Appellant excepted to the order granting the new trial, and made up a bill of exceptions. Upon the third trial the verdict was for the defendants.

Dunn prosecutes an appeal from the order of the court setting aside the verdict and judgment granting a new trial after the second trial, and also appeals from the judgment for the defendants upon the third trial.

As neither brief has complied with Section 3 of Rule 3 of the court, requiring that a classification of the questions discussed, and the authorities relied on and cited under. the appropriate heading, should accompany every brief, we have had some difficulty in formulating the grounds upon which a reversal is aoked; but, as there has been no motion to dismiss the appeal for this failure, we will dispose of the case.

1. It is first insisted that the court erred in setting aside the verdict rendered upon the second trial.

The instructions given upon the second and third trials were identical, and read as follows:

"1st. If the jury believe from the evidence that at the time the plaintiff sold the farm to Cobb, the defendants Cobb and Eads had a bid on the farm from May Collins for a higher price than the one at which it was sold to Cobb, or, if the jury believe from the evidence that the defendants, before the sale to Cobb, had secured a prospective purchaser for the farm at a higher price than the one paid by Cobb, and that for the purpose of inducing the plaintiff to sell the farm to Cobb, the defendants represented to the plaintiff that their prospective buyer had grown indifferent when they did not, in good faith, believe such prospective purchaser had grown indifferent, the jury should find for the plaintiff.

"2nd. Unless the jury believe from the evidence either that at the time the sale was made to Cobb the defendants had a bid on the farm from May Collins at a higher price than Cobb paid, or that the defendants, before the sale to Cobb, had secured a prospective purchaser for the farm at a higher price than Cobb paid, and that, for the purpose of inducing the plaintiff to sell the farm to Cobb, they represented to the plaintiff that their prospective purchaser had grown indifferent, when they did not, in good faith, believe such statement to be true, the jury should find for the defendants.

"3rd. If the jury find for the plaintiff, they should allow him what they may believe from the evidence is the

difference between the sum Cobb paid for the farm and the sum for which Cobb sold it; but, if any sum is allowed the plaintiff, it should be $1,131.45, the sum claimed by the plaintiff in the petition.

"4th. Nine of the jury can make a valid verdict, but if all the jury do not agree upon a verdict it must be signed by all who agree to it."

No objection is taken by either party to the instructions; but the court set aside the verdict and granted a new trial upon the authority of Taylor v. Howser, 12 Bush, 467; Ray v. Jeffries, 86 Ky., 369; Jesse v. Shuck, 11 Ky. L. R., 464, 12 S. W., 304; Baries v. Louisville Electric Light Co., 118 Ky., 833, and other similar cases which lay down the rule that where the damage can be measured, and the verdict of the jury is such as to demonstrate that the proof was disregarded, and the law of the case as embodied in the instructions was disobeyed, a new trial should be granted.

The cases relied upon, *supra*, fully establish the proposition of law contended for; and, since the damages under the instructions given in this case were capable of exact measurement; and, under the instruction a finding for Dunn should have been for $1,131.45, or nothing, a verdict for $500.00 was the result of a total disregard of the instructions, and directly contrary thereto.

Conceding, however, that the verdict for $500.00 was not authorized by the instruction, and that it did not conform to the contention of either party, and was erroneous, appellant moved the court to enter a judgment for the full amount of $1,131.45 claimed in the petition, upon the theory that when the jury found for Dunn on the issue of his right to damages, there was nothing left for the court to do except to enter judgment for the amount sued for. It is argued that if the jury had simply said, "We, the jury, find for the plaintiff," the court would have been authorized to enter a judgment for the full amount claimed in the petition; and since the jury in the case at bar found for the plaintiff upon the issue of fact which authorized a recovery, it was the duty of the court to apply the law to the finding of fact, and enter a judgment for the amount claimed in the petition.

But this argument proceeds upon the erroneous conception that when the jury sustained plaintiff in his right to recover, they also sustained him in the amount claimed.

The rule requiring the judgment to conform to the verdict is stated as follows in 23 Cyc., 820:

"The judgment must follow and conform to the verdict, not only as to the amount of the recovery, but also as to the nature and measure of relief and as to the parties, and it cannot go beyond the verdict in settling the rights of the parties, or admeasuring the recovery, or declaring or foreclosing liens, except that in cases where the evidence would have authorized the court to direct a' verdict, it may, in rendering judgment, go further than the verdict in adjusting the equities of the parties."

To the same effect see Marmaduke v. Tennant, 4 B. Mon., 214, and L. & N. R. R. Co. v. Hartwell, 99 Ky., 436.

Although it has been recognized as a general rule that where the amount is not actually in issue, a simple finding for the plaintiff, or the defendant, is usually sufficient without specifying any particular sum, this rule does not apply where the jury goes further and finds for the plaintiff a specific erroneous sum in damages. It might well be argued that where there was no dispute as to the amount involved, or the instructions plainly told the jury the amount which the plaintiff was entitled to recover, if they found for him, a simple finding for the plaintiff means a finding for the amount claimed, and a verdict might very properly be rendered accordingly. Cooper v. Poston, 1 Duvall, 92, 85 Am. Dec., 610; Jackson v. Hill, 22 Ky. L. R., 563, 58 S. W., 434; Dine v. Donnelly, 134 Ky., 782.

This practice is based upon the reasonable idea that in failing to specify the amount of the finding in the verdict, the jury clearly intended to mean the uncontroverted amount. But, when the jury goes further and specifies the amount of the finding, which is erroneous under the instructions, the court is not justified in entering a judgment for a different amount. In such a case the judgment would not conform to the verdict; on the contrary, it would depart from it; and all the court can do is to set aside the verdict as being contrary to the law of the case as contained in the instructions.

The jury having fixed the recovery at $500.00, we cannot assume that they would have agreed to a verdict for $1.131.45. Evidently the verdict was the result of a compromise; but, under the rule laid down in Taylor v. Howser, *supra,* and the other cases cited, a compromise verdict in a case of this character, where the measure of

damages is fixed and certain, will not be sustained. The very principle upon which those cases are based prohibits a verdict for $500.00 under the instructions in this case. If the verdict had been for one cent, could it be assumed that the jury intended that a judgment should or could go for $1,131.45? We think not. Yet appellant's contention would carry the rule to that extreme result.

We conclude that the trial court did not err in setting aside the verdict and judgment resulting from the second trial.

2. Passing now to the third trial, no complaint is made of the instructions to the jury, which gave the law bearing upon the relations between Dunn and the appellees in every respect as was claimed by Dunn.

Appellant insists, however, that he should have been granted a new trial, after the third trial, on account of newly-discovered evidence, of which he was not aware at the time of the trial. That evidence is outlined in the affidavit of the new witness Boggs, a surveyor, who laid off the 22 acres of land which Phelps sold to Collins, on July 12th, 1912.

It will be remembered that, under the instructions, the case turned upon the fact whether the defendants, as agents for Dunn, had a bid from Collins for Dunn's farm at the time Dunn's farm was sold to Cobb. It, therefore, became important to fix the precise date of the sale by Phelps to Collins. Boggs says he was employed on July 10th, 1912, to make the survey, and that he made it on the next day—the 11th of July, 1912—which was the same day that Dunn conveyed his farm to Cobb; and that he endorsed the date of the survey ("July 11, 1912") on the plat at the time.

Upon cross-examination Cobb testified as follows:

"Q. What day of the week did you close this trade with May Collins? A. I can't tell you. I think it was— I don't know whether it was Thursday or Friday, but I do believe it was on Saturday I got May Collins' check. I know this: I purchased this land through Mr. Eads from Mr. Dunn about two o'clock one evening, and the next morning about seven o'clock I drew the contract with Mr. Dunn. Mr. Dunn had to go out to his farm that day, and that evening Mr. Maupin went to his house and took the deed for him and his wife to sign that afternoon. That night about seven o'clock Mr. Collins came to our office, after looking over the land, and bought that land;

and the next day they surveyed it, because they could not fix the line until it was surveyed; and the next afternoon May Collins gave me a check after the land had been surveyed.''

From this it will be seen that Cobb testified he bought Dunn's farm in the forenoon, and that he did not make the sale to Collins until about seven o'clock in the evening of the same day, and after Collins had looked over the land; and that the survey was made on the succeeding day. The contract of sale and the deed from Dunn to Cobb were executed on July 11th; and when Cobb says they surveyed the Phelps strip on the next day, and that he also received the check from Collins for the Dunn farm on the next afternoon, he puts the survey and the payment by Collins on July 12th. But Boggs' affidavit shows that he made the survey on July 11th; and in this respect Boggs' testimony becomes quite material.

From this appellant argues that the trade between Cobb and Collins had been consummated as early at July 10th, and that Boggs' evidence would have been all-important in sustaining plaintiff's case.

It is a general rule that a new trial will not be granted upon the sole ground of the discovery, after verdict, of parol testimony concerning a point litigated or a fact known to the party; but when the newly-discovered evidence is of such a permanent and unerring character as to preponderate greatly, or have a decisive influence upon the verdict to be overturned by it, a new trial should be granted. Allen v. Perry, 6 Bush, 85; Mercer v. Mercer, 87 Ky., 21; Richardson v. Huff, 19 Ky. L. R., 1428, 43 S. W., 455; Ousley v. Ousley, 117 Ky., 47; Torian v. Terrell, 122 Ky., 745; L. & N. R. R. Co. v. Ueltschi, 126 Ky., 556.

Boggs' testimony being by far the most explicit evidence upon the controlling feature of the case, and supported by the endorsement upon the map fixing the day of the survey, brings it within the high class of evidence called for by the rule above stated; and as the affidavit of Dunn shows that he was in no way lacking in diligence in failing to obtain Boggs' evidence upon the trial, the circuit court should have granted appellant a new trial.

Judgment reversed for further proceedings consistent with this opinion.