## Chesapeake & Ohio Railway Co. v. Meyers.

(Decided December 3, 1912.)

### Appeal from Campbell Circuit Court.

1. Railroads—Personal Injury—Action for Damages—Public Crossing—Dangerous Condition—Evidence.—In an action for damages against a railroad company for personal injury, it is not improper to permit the plaintiff to testify that defendant's physician examined his injuries; but the remark of plaintiff's counsel to the

effect that the other side was insinuating that they were exaggerating, and that they wanted to show that they gave them every opportunity they wanted, was improper, though not prejudicial error.

2.  Same—Other Accidents.—In an action against a railroad company for personal injury, alleged to have resulted from the negligence of the defendant in permitting a dangerous opening to remain between the rails of the tracks where they crossed a public road, evidence that other vehicles were caught in the opening was admissible for the sole purpose of showing the dangerous condition of the tracks and roadway, it appearing that when the other accidents occurred, the conditions were practically the same.

3.  Same—Statement of Court—Prejudicial Error.—Where defendant rested at the close of plaintiff's evidence, the action of the court in stating that "the defendant informs the court that they have no evidence to introduce," which statement the court, upon objection, withdrew, saying that he would use the language of the defendant "that they would offer none," was not prejudicial error.

4.  Same—Damages—Separable Items—Remittitur.—Where the items constituting the damages recovered are separable, so that the court may eliminate those not properly recoverable from those recoverable, the court may, on plaintiff's motion, remit so much of the damages as represents the items which are not properly recoverable.

5.  Same—Peremptory Instructions—Contributory Negligence.—In an action for damages for personal injuries, evidence examined and held that the question of plaintiff's contributory negligence was for the jury, and that a peremptory instruction was properly refused.

6.  Same—Instructions.—Where defendant is not entitled to a peremptory instruction based on the contributory negligence of the plaintiff, it is not error to refuse an instruction which is in effect a peremptory.

7.  Same—Damages—Excessive.—Where in addition to other injuries, plaintiff's hand was rendered useless, a verdict for $5,700 is not excessive.

GALVIN & GALVIN and WILLIAM A. BURKAMP for appellant.

RAMSEY WASHINGTON and HOWARD M. BENTON for appellee.

OPINION OF THE COURT BY · WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Oneonta and Twelve Mile Road is a county road running between Alexandria, the county seat of Campbell County, and Oneonta, a station on the Chesapeake & Ohio Railroad, and a landing on the Ohio River. The

road is used by a large number of people. Across this road the Chesapeake & Ohio Railway Company maintains two tracks, a main and a spur. track. The two tracks are just far enough apart to allow cars to clear each other in passing. Between two of the rails of the spur track, at a point on the road, is an opening about two and one-half inches wide. This condition existed at the time of the accident hereinafter referred to, and had existed for several years. Charging a failure of duty on the part of the railroad company in permitting the road and its tracks, at the point where the tracks crossed the road, to become and remain in a dangerous condition, and that while driving across the track, one of the runners of his sled was caught in the opening between the two rails of the spur track, thereby causing him to be thrown from his sled and injured, plaintiff, William C. Meyers, brought this action to recover damages. He asked damages in the sum of $6,300, of which $300 was for medical services, incurred and to be incurred, $1,000 for loss of time, and $5,000 for mental and physical suffering and permanent impairment of his power to earn money. The item for loss of time was subsequently amended to read $575. The jury returned a verdict in favor of the plaintiff for $5,700. On motion of plaintiff, the sum of $200, for medical services to be incurred in the future, was remitted. Judgment was entered in favor of plaintiff for $5,500. Defendant appeals.

The accident took place on March 20, 1911. At the time of the accident, plaintiff was returning to his home from Oneonta Station. He was driving a sled which was being drawn by a pair of mules. In crossing the spur track one of the runners of the sled caught in the opening between the two rails, and plaintiff was thrown out. His leg was bruised between the knee and the hip. He received a blow over the eye, which injured the supraorbital nerve, and caused a catarrhal condition of his head. The principal injury was to his hand, which became badly swollen and inflamed and remained in that condition for several months. The tendons of the hand were so affected that plaintiff has practically lost the use of it. This condition is permanent. Plaintiff was confined to his bed two or three months, and could not walk on his leg for five or six months. He suffered intensely from his injuries, and it is very probable that he will continue to suffer for sometime to come. The testi-

mony showed that up to the time of the trial he had incurred a physician's bill of $100. There was also evidence that in order to have an operation performed it would be necessary to incur an additional physician's bill of $200.

While it was not proper for the court to permit the two physicians who examined plaintiff for the purpose of testifying to state what the reasonable value of their services was, defendant did not object or except to their testimony, and cannot, therefore, avail itself of the error.

The court did not err in permitting plaintiff to testify that defendant's physician examined his hand. There was no impropriety in permitting him to tell what physicians examined him, and to tell who they were, even if one of them happened to be a physician in the employ of the defendant. While the remark of plaintiff's counsel when this evidence was objected to, to the effect that the other side was insinuating that they were exaggerating, and they wanted to show that they gave them every opportunity they wanted, was improper in the absence of anything in the record showing that such was the case, we are not inclined to hold that the statement was prejudicial error.

During the progress of the trial, the court permitted two or three witnesses to testify either that the wheels of their vehicles had been caught in the opening in the spur track, or they had seen vehicles of others so caught. It was shown that when these occurrences took place, conditions were practically the same. In admitting this testimony, the court admonished the jury that it could be considered for the sole purpose of throwing light on the question whether or not the crossing was in a dangerous condition or otherwise, and for no other purpose. One of the issues was: "Did defendant permit the roadway where its tracks crossed it and its tracks to be and remain in a dangerous condition? The fact that, conditions being the same, other vehicles were caught in the opening in the spur track is certainly a circumstance tending to show the dangerous condition of the track and roadway. With the limitation contained in the admonition of the court, we think the evidence was clearly admissible. Georgetown, &c. v. Cannon, 7 R., 379; 29 Cyc., 611.

At the conclusion of the evidence for plaintiff, the defendant moved for a peremptory instruction. After

overruling the motion, the court said: "The defendant informs the court that they have no evidence to introduce." To this statement the defendant objected and excepted. Thereupon the court said: "I don't recall just the expression I used, but the stenographer has it that I indicated to you that the defendant had no evidence to offer, to which the defendant objects. The court withdraws that, and uses the language of the defendant that they would offer none." To this statement the defendant also objected and excepted.

Counsel for defendant insist that this statement of the court was very prejudicial, because it not only put the defendant in the attitude of having no evidence to introduce, but attracted with especial emphasis the attention of the jury to this fact. The point is made that the defendant had the right to rest its case upon the evidence introduced by plaintiff, without having the attention of the jury called either to the fact that it would offer no evidence, or it had no evidence to offer. We are unable to see how the statement of the court could have prejudiced the substantial rights of the defendant. Whether defendant says "the defendant rests," or "the defendant will offer no evidence," or "the defendant has no evidence to offer," and the court so informs the jury, the result is practically the same. If, as a matter of fact, the defendant does not offer any evidence, the jury knows it, whether informed by the court or not; and manifestly their verdict cannot be influenced by giving them information of that which they cannot fail to know.

While the motion for a new trial was pending, the court, over the objection of the defendant, entered the following order:

"Upon motion of plaintiff, the sum of $200, covering future medical services, is remitted from the judgment recovered March 6, 1912."

It is insisted that under the practice of this State, trial courts have no power to remit any portion of a judgment, but that if the judgment is excessive they must award the defendant a new trial. While this is the general rule, Brown v. Morris, 3 Bush, 81; L. & N. R. R. Co. v. Earl's Admx., 94 Ky., 370; yet where the items constituting the damages recovered are separable so that the court may eliminate those not properly recoverable from those recoverable, the court has power to require the plaintiff to remit, or may, on plaintiff's motion,

remit, so much of the damages as represents the items which are not properly recoverable. John's Admr. v. Johnson, 104 Ky., 714; Masterson v. Hagan, 17 B. Mon., 325. Here the plaintiff asked general damages in the sum of $5,000. The proof shows that he lost eight months' time, and that his time was reasonably worth $50 a month, making a total of $400 for time lost. Up to the time of the trial he had incurred a physician's bill of $100. There was evidence to the effect that an operation on his hand would cost $200. However, the witness who so testified also advised against the operation. Manifestly, the verdict is composed of the following items: $5,000 for general damages; $400 for loss of time; $300 for physician's bills, incurred and to be incurred. The evidence fails to show that the operation, involving the item of $200 physician's bills to be incurred in the future, was reasonably necessary or would have to be performed, and it being possible to separate this item from the verdict and judgment, and leave the balance of the judgment intact, we conclude that the remittitur of $200 was properly adjudged.

Another point urged by the defendant is that the court erred in overruling its motion for a peremptory. Particular stress is placed upon the fact that plaintiff himself admits that he knew of the opening between the two rails, and that he had frequently warned others of the danger. It is, therefore, insisted that if he, with knowledge of the opening, drove his sled into it, he was guilty of such contributory negligence as precludes a recovery. While it is true that plaintiff did know of the existence of the opening, and had known of it for sometime, and had also warned others of the danger, yet it also appears that on the occasion in question he had stopped just before reaching the track in question for the purpose of effecting a sale of his tobacco. When he started to cross, there was a man with a team on the other side waiting for him to get over. He says that he thought he heard a train whistle in the distance, and that he had his mind on the approaching train and momentarily forgot the opening in the track. There was also evidence that the sled itself would have a tendency to slide along the tracks. The opening was not a large one, which a person could easily avoid. It is by no means certain that if he had had his attention fixed on the opening, he could have avoided it. It was just as much his duty to use ordinary care to discover the approach

of a train and keep out of its way as it was to avoid striking the opening in the rails with his sled. Under the circumstances, therefore, we cannot say as a matter of law that plaintiff was guilty of contributory negligence. The question was one for the jury. The court told the jury that if they believed from the evidence that on the occasion in question plaintiff, having had previous knowledge of such defective condition in said crossing, failed to exercise for his own safety such care as ordinarily prudent persons ordinarily exercise under the same or similar circumstances, and that such lack of care on his part contributed to the injuries received by him, and but for such lack of care on his part he would not have been injured, they should find for the defendant. This instruction is not subject to complaint.

The defendant offered several instructions to the effect that if the plaintiff knew of the opening between the rails in the track and of the danger thereof, and with such knowledge drove upon the crossing and his sled was caught in the opening, the jury should find for the defendant. Instructions of this character were in effect a peremptory instruction for the defendant, and were properly refused for the same reason that the motion for a peremptory was overruled.

Aside from the injury to plaintiff's head, which seems to have affected one of the nerves, and the injury to his leg, which lasted for sometime, it appears that plaintiff suffered greatly from the swollen and inflamed condition of his hand, and that his hand is now, and will continue to be, practically useless. That being true, we cannot say that the verdict is so excessive as to strike us at first blush as being the result of prejudice or passion.

Judgment affirmed.