## R. Burleigh & Sons v. Overton.

(Decided January 5, 1917.)

### Appeal from Hopkins Circuit Court.

1. Contracts—Injury From Breach of Contract.—As a general rule, one who is injured by a violation of an agreement to do a specific act, not necessarily involving personal services, is not required to seek and perform other contracts for the benefit of one who, by breaking faith with him, has caused the injury.

2. Damages—Law of Contract—Breach.—Where an agreement to do a specific act is broken, the damages for the breach may be said to be fixed by the law of the contract the moment it is broken, and they cannot be altered by collateral circumstances independently of, and totally disconnected from, the loss, and from the party occasioning it.

3. Damages—Measure of.—The measure of damages for the breach of a contract by which the plaintiff agreed to cut and deliver to the defendant a certain quantity of timber, is the reasonable profit which the plaintiff might have made under his contract, to be ascertained by fixing the difference between the contract price and what it would cost the plaintiff to complete the work, according to the contract.

4. Evidence—Logs and Logging—Inspection.—The declaration of a defendant's timber inspector to the effect that the timber inspected by him was satisfactory and complied with the contract, was competent evidence to show that fact.

5. Appeal and Error—Erroneous Instruction—Reversal.—An erroneous instruction which did not prejudice the substantial rights of the appellant, will not authorize a reversal.

6. Damages—Separable Items of.—Where the items constituting the damages recovered are separable, so that the court may eliminate those improperly recovered, it may do so and direct a judgment for the proper amount.

7. Judgment—Interest—Corrected Judgment. — Upon the reversal of a common law judgment containing an erroneous item of damages recovered, with instructions to enter a judgment for a differ-

ent sum, the corrected judgment will bear interest from the day the verdict was rendered.

LUKE A. TEAGUE and CHAS. G. FRANKLIN for appellant.

J. A. JONSON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellant, R. Burleigh & Sons, incorporated, is engaged in manufacturing axe and pick handles from ash, oak, and hickory timber, at its factory at Dawson Springs, Ky.

The petition alleges that on or about March 25th, 1915, the plaintiff, Overton, orally sold to the appellant all the ash timber suitable for making axe handles, on a tract of 80 acres of land in Christian county, known as the Bass land. The timber was to be straight grained and free from knots, and five inches and over in diameter, to be cut into blocks and delivered on the railroad at Bakersport, Ky., where they were to be received, inspected, and paid for by appellant, at $8.00 per cord. The petition further alleges that plaintiff cut into blocks and placed on the railroad at Bakersport 25 cords of the timber; that he had 359 logs cut and in the river, leaving 650 trees standing upon the Bass land and yet to be cut and delivered, under the contract, but that the appellant refused to accept or pay for the 25 cords, and repudiated the contract as to the logs and trees.

The petition also alleges that the timber in the logs would make 42 cords, while the timber in the standing trees would make 152 cords, or a total of 194 cords of timber undelivered.

Some time in April, 1915, Overton requested the appellant to have its inspector inspect and receive the 25 cords which had been delivered at Bakersport; and he alleges that Dockery, appellant's inspector, did inspect the timber and approved it, but that under his instructions from appellant, Dockery declined to receive any part of the timber which was under 8 inches in diameter, claiming that its contract with Overton called for timber 9 inches or more in diameter, although he was willing to relax that provision of the contract and receive all timber that was 8 inches and over in diameter.

The proof shows that about one-third of the 25 cords of timber delivered at Bakersport was under 8 inches in diameter. Consequently, as each party stood upon

his own interpretation of the contract—the appellant refusing to accept any timber under 8 inches in diameter, and Overton refusing to deliver any of the timber unless appellant should take all that was 5 inches and over in diameter—no part of the 25 cords of timber was accepted by the appellant.

Overton brought this action for damages, claiming (1) $200.00, the purchase price of the 25 cords delivered at Bakersport; (2) the net profits on the 194 cords contained in the logs in the river and in the standing trees, at $2.85 per cord, aggregating $552.80; and, (3) fifty cents per cord ($21.00) which he alleged he had expended on the 359 logs (42 cords) in the river, making a total claim of $773.80.

It will thus be noticed that the petition presents the following three items of damages:

1. 25 cords delivered, at $8.00 per cord...............$200.00
2. 359 logs (42 cords) cut and in the river, and 650 standing trees (152 cords), making a total of 194 cords, at $2.85 per cord, profit..... 552.80
3. 50 cents per cord expended on 42 cords............. 21.00

Total ....................................................................$773.80

After traversing the allegations of the petition, the answer alleges that under the contract with Overton, defendant, agreed to buy all the ash timber on the Bass land which was not less than 9 inches in diameter, three feet long, free from knots and straight grained, to be delivered at Dawson Springs, and that defendant reserved the right to stop accepting, receiving or paying for said timber at any time it saw fit to do so; and that it notified plaintiff to stop cutting and delivering the timber before any of it had been cut. And, the answer further alleged that the timber was not up to the contract grade.

The reply traversed the affirmative allegations of the answer; and, by an amended petition, Overton alleged that he had made diligent efforts to sell the cut timber within a reasonable time after appellant's refusal to accept it, but that it was worthless and unsalable by reason of the fact that it had, in the meantime, become water-soaked and worm-eaten.

Upon a trial before a jury, Overton recovered a verdict and judgment for $773.80. The defendant appeals.

For reversal, it is insisted, (1) that the verdict is not supported by the evidence, and (2) that instruction No. 5, fixing the measure of damages, was erroneous.

As to the first ground, while appellant concedes that the plaintiff's case is sustained by the testimony of the plaintiff alone, it insists that plaintiff's proof, when considered as a whole, fails to sustain the amount of the verdict. This is true in part, although the criticism cannot be said to apply to the principal items of plaintiff's claim, as appellant contends.

Overton testified that the price of the timber, the cutting of the trees, and the sawing and delivery, would cost him $5.15 per cord, which would leave him a profit of $2.85 per cord. He further testified that the ash timber in the 650 standing trees (152 cords), was worth $1.25 per cord. From this it is argued that Overton's loss was only the difference between $2.85 and $1.25, or $1.60 per cord, while the jury allowed him $2.85 per cord. Under this view of the case, appellant contends that according to Overton's own testimony, his recovery should have been limited to $677.20.

This argument rests upon the theory that since Overton still owns the 650 trees, the defendant should be given credit for their value. The argument, however, is unsound, since the measure of damages in a case of this character is the reasonable profit which the plaintiff might have made under his contract, to be ascertained by fixing the difference between the contract price and what it would cost the plaintiff to complete the work, according to the contract. Horn v. Carroll, 28 Ky. L. R. 839, 90 S. W. 559; Hollerbach & May Contract Co. v. Wilkins, 130 Ky. 54; Stearns Lumber Co. v. Inman, 154 Ky. 253; Owensboro Shovel & Tool Co. v. Moore, 154 Ky. 431; Langstaff-Orm Mfg. Co. v. Wilford, 160 Ky. 733.

This is not a case involving personal services, where the party injured in person or property is required to exercise reasonable care and diligence to avoid loss or to minimize the resulting damage. On the contrary, the damages in a case of this character, may be said to be fixed by the law of the contract the moment it is broken, and cannot be altered by collateral circumstances independently of, and totally disconnected from, the loss, and from the party occasioning it. As a general rule, one who is injured by a violation of an agree-

ment to do a specific act, not necessarily involving personal services, is not required to seek and perform other contracts for the benefit of one who, by breaking faith with him, has caused the injury. 8 R. C. L., p. 445; Sullivan v. McMillan, 37 Fla. 134, 53 A. S. R. 239; Cameron v. White, 74 Wis. 423, 5 L. R. A. 495; Harness v. Kentucky Fluor Spar Co., 149 Ky. 65, Ann. Cas. 1914, A 803 and note.

Furthermore, the declaration of Dockery, appellant's inspector, to the effect that the 25 cords delivered at Bakersport were satisfactory and complied with the contract, was competent evidence to show that the 25 cords were satisfactory and complied with the contract. Worthington v. Gwin, 119 Ala. 44, 43 L. R. A. 385. The fact that Dockery contradicted Overton and two other witnesses upon this point goes only to the effect of his statement, not to its competency.

The testimony of Overton and the admissions of Dockery sustained plaintiff's case.

The first four instructions presented to the jury the respective claims of the plaintiff and the defendant as to what the contract was, directing them to find for the plaintiff in case they should believe the plaintiff's version was the true one; otherwise, to find for the defendant.

The fifth instruction, which is the only one complained of, reads as follows:

"The court instructs the jury that if they find their verdict for the plaintiff, they will award him such sum in damages as they may believe from the evidence will reasonably and fairly compensate plaintiff for such loss, if any, as he sustained by defendant's breach, not exceeding what would have been the reasonable value, at the contract price, of all the ash timber contracted for and not taken, less the reasonable expense of cutting, preparing and delivering at Bakersport, in all respects according to the contract, and not to exceed $773.80, the sum claimed in the petition; but the jury cannot award plaintiff any sum on account of the timber not actually delivered at Bakersport unless you should further believe from the evidence that the plaintiff was ready, willing and able to deliver same at Bakersport, in all respects according to the agreement."

It will be noticed that this instruction places all of the timber, the uncut as well as the cut timber, upon

the same basis, by directing the damages to be calculated at the contract price, less the reasonable expenses of cutting, preparing and delivering the timber at Bakersport.

In this respect we think the instruction was erroneous, since the measure of damages applicable to the timber not cut differs from that applicable to the timber that had been cut and delivered at Bakersport. If the contract was, as claimed by Overton, and he complied with it in so far as it related to the 25 cords delivered at Bakersport, the measure of damages as to that portion of the timber was the contract price, less any sum which the defendant may have paid thereon. But, if the jury adopted plaintiff's version of the contract, and the defendant breached it by refusing to permit the plaintiff to carry it out, though plaintiff was ready, willing and able to do so, the measure of damages upon the undelivered timber was the difference between the contract price and the reasonable cost to Overton of carrying out the contract. Langstaff-Orm Mfg. Co. v. Wilford, 160 Ky. 737, and cases *supra*.

But the instruction, although it was erroneous in so far as it applied to the 25 cords that were delivered at Bakersport, was not prejudicial to appellant, since the appellee recovered only $200.00 upon that item, and under the uncontradicted proof and the law upon the measure of damages, he was entitled to recover that amount, if anything.

The item of fifty cents per cord alleged to have been expended on 42 cords contained in the 359 logs cut, but not delivered, was not proved, and if proved it has no proper place in this case, under the contract. Nowhere in the pleadings or in the proof is this charge explained, or justified, although it amounted to $21.00 and was carried into the verdict.

For breach of contract the measure of damages is the net value of the contract, or what would have been realized had the contract been performed. This, in full, covers actual outlay and anticipated profits. When profits are sought, a recovery for outlay is included, and something more. That something is the profits. If the outlay equals or exceeds the amount to be recovered, there can be no profits. U. S. v. Behan, 110 U. S. 345.

So, when the court told the jury that plaintiff's measure of damages was the difference between the con-

tract price and what it would cost the plaintiff to perform his contract, it necessarily included this claim of fifty cents per cord as a part of that cost, and the separate allowance thereof by the jury constituted double damages, to that extent.

It is, however, a well established rule in this jurisdiction that where the items constituting the damages recovered are separable so that the court may eliminate those improperly recovered, it may do so and direct a judgment for the proper amount. Lexington Ry. Co. v. Johnson, 139 Ky. 323; Louisville Water Co. v. Scholtz, 140 Ky. 436; C. & O. Ry. Co. v. Meyers, 150 Ky. 841; Sturgeon's Admr. v. McCorkle, 163 Ky. 11.

As the plaintiff recovered the full amount claimed under the three items of damages set forth in the petition, this item of $21.00 is clearly separable and will be eliminated as improperly recovered.

Judgment reversed and cause remanded, with instructions to the circuit court to enter a judgment in favor of the plaintiff for $752.80, with interest thereon from October 16, 1915, the day the verdict was rendered. Lexington Ry. Co. v. Johnson, supra.

Since costs follow the judgments, the defendant will pay all costs in the circuit court, and the plaintiff will pay all costs in this court.