## Wigginton's Admr. v. Rickert.

(Decided January 27, 1920.)

Appeal from Jefferson Circuit Court
(Common Pleas, Third Division).

1.  Municipal Corporations—Automobiles—Intoxication of Driver of Automobile—Evidence.—It is competent for the purpose of throwing light on the speed at which a machine is going and the reckless manner in which it is driven at the time of a collision to show the intoxicated condition of the driver and the number of drinks he has taken within a reasonable time before the accident.

2.  Municipal Corporations—Automobiles—Speed at Which Automobile Is Being Run—Evidence.—Where an automobile collided with a street car, it was competent to show the rapid speed at which it was going shortly before the collision.

3.  Trial—Instructions—Damage Suit—Peremptory Direction to Find for Plaintiff.—Where there is no issue of fact concerning the right of the plaintiff to recover damages in some amount the jury may be given specific directions to find for the plaintiff.

4.  Damages—Special—Compensatory.—An allowance for medical attention and loss of time comes under the head of special damages and is distinct from the allowance of compensatory damages. In personal injury cases there may be a recovery for compensatory damages such as permanent or partial injury, pain and suffering, and also a recovery for special damages, such as loss of time and medical expenses.

5.  Damages—Punitive Damages—Allowance for Without Compensatory Damages.—In personal injury cases, although the jury are told they may award punitive damages "in addition to compensatory damages" they may, without awarding any compensatory damages, allow punitive damages.

6.  Damages—Punitive Damages—Amount of That May Be Allowed.— The amount of punitive damages that may be allowed in a personal injury case will not be disturbed unless it appears to be

entirely disproportionate to the injury and so excessive as to have been given under the influence of passion or prejudice.

STROTHER & HAMILTON for appellant.

FRED FORCHT and H. N. LUKINS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

About ten o'clock at night Bertram Wigginton and three companions, after visiting in an automobile owned and operated by Wigginton, and drinking intoxicating liquor at a number of saloons in different parts of the city of Louisville, decided to take a run from the west end of the city east on Main street. At Sixth and Main the street cars going west on Main street leave that street and turn in to Sixth street going south on that street. On this occasion as a street car was making the turn from Main to Sixth and going at a very slow rate of speed it was run into and hit by the automobile yet operated by Wigginton, and at the time being run in a reckless manner, at a high and dangerous rate of speed. We say this because of the intoxicated condition of the driver and the fact that four persons who happened to be on Main street at different places between Sixth and Tenth when the machine passed, and who were qualified by experience and observation to express an opinion, said, one of them, that it was running about forty-five miles an hour, another one, about as fast as the salvage corps goes in racing to a fire; the other two that it was going forty miles an hour. It should, however, be said that the two surviving occupants of the automobile testified that while going up Main street and when the street car was struck, the machine was running at from twelve to fifteen miles an hour; but the jury did not, nor do we, give much attention to the evidence of these witnesses.

When the automobile struck the street car it was thrown back with such force and violence against a telephone pole on the corner of Sixth and Main that the machine was wrecked, and two of the occupants, one of them being Wigginton, were killed.

At the time the collision occurred the appellee, Mamie Rickert, who was thirty-four years of age, accompanied by her daughter, was a passenger on the street car. She and her daughter occupied together a seat on

the opposite side of the car from that struck by the automobile, she being seated next to the window and her daughter next to the aisle. When the collision occurred she was thrown by the force of it against the side of the car or window and her daughter was thrown against her.

After this Mamie Rickert brought suit against the street car company and the administrator of Wigginton to recover damages for injuries alleged to have been sustained as a result of the collision, and on a trial of the case the court directed a verdict in favor of the street car company and the jury having found against the administrator there was a judgment on the verdict in favor of Mrs. Rickert for $4,400.00 and the administrator appeals.

On this appeal the assignments of error are (1) that the court erred in overruling the motion of the administrator in arrest of judgment; (2) that the verdict was contrary to law; (3) that the court erred in directing a verdict in favor of the street car company; (4) committed error in admitting incompetent evidence; (5) that the verdict was excessive; and (6) the instructions are also complained of.

Taking up the material grounds of alleged error out of the order in which they appear in the briefs, the complaint that incompetent evidence was admitted is based on the fact that the trial court permitted witnesses to testify as to the number of drinks Wigginton and the occupants of the machine had taken at the various saloons they visited within a few hours before the accident, in parts of the city some distance from Sixth and Main; it being argued that this evidence was too remote from the time and place of the accident to throw any light on the causes that brought it about, and its introduction only served to prejudice the minds of the jury against the driver and occupants of the machine.

The evidence shows that beginning two or three hours before the accident these parties visited a number of saloons, drinking at each of them, the last one at which they stopped being about thirteen squares from Sixth and Main; that when they left this saloon they did not make and stops between that point and Sixth and Main, although it should be said that in going up Main street they were on their way to another saloon. We think this evidence was competent for the purpose of throwing light on the speed at which the machine was going and the reckless manner in which it was being driven at the time

of the collision, because it is a matter of common knowledge that persons under the influence of liquor are wholly unfit to operate automobiles in cities or out of them either in the night or day; they have no thought of their own safety and appear to be wholly possessed of a desire to run the machine as fast as it can go without any regard to the rights of other people; and so when an automobile accident happens that results in a suit for damages it is permissible to show the intoxicated, condition of the driver and the number of drinks of intoxicating liquor he has taken, beginning within such a length of time before the accident as would furnish some evidence of his condition when it occurred.

It was likewise competent to permit the witnesses who saw the machine on its journey up Main street at Tenth and Seventh and near Sixth to relate the speed at which it was going; this evidence tending to show how fast it was being run at Sixth street, as the distance between Tenth and Sixth is only four squares, and only a few moments elapsed between the time when these witnesses saw it and the accident.

With reference to the ruling of the trial court in directing a verdict for the street car company we have no fault to find. There is no evidence of probative value in the record, or reasonable inference, that can be drawn from any evidence that the street car company was guilty of any negligence contributing to the accident. The street car was well lighted and could plainly be seen by Wigginton, if he had been looking, or had given any thought or attention to its presence, and was in the act of making the turn from Main to Sixth at a very slow rate of speed when struck by the automobile.

The court also peremptorily instructed the jury to find a verdict for Mamie Rickert against the administrator in "such sum as they believe from the evidence will fairly and reasonably compensate her for such expense, if any, incurred by her for physicians and medicines in being cured of her injuries, not to exceed the sum of one hundred dollars, and for such time lost by the plaintiff from her employment as seamstress not to exceed the sum of $300.00, and for such physical and mental suffering, if any of either, which she may have endured, and for such permanent impairment of her power to earn money, if any, directly resulting to her from her injuries, the award on the last two items not to exceed the sum of

$10,000.00, the whole award not to exceed the sum of. $10,400, the amount claimed.''

And further instructed ''that if they believe from the evidence that the plaintiff's injuries on the occasion referred to were the result of gross negligence on the part of B. M. Wigginton, then the jury may, in their discretion, award to the plaintiff, in addition to compensatory damages, punitive damages, the whole award, however, not to exceed the sum of $10,400.00, the amount claimed in the petition. If the jury find both compensatory and punitive damages they shall say by their verdict how much they find as compensatory damages and how much as punitive damages.''

The awkwardly written but easily understood verdict returned by the jury reads: ''We of the jury allowed $100.00 hundred dollars for medical services rendered. We the jury allow her as seamstress 300 hundred dollars. We the jury also find punitive damages the sum of 4 thousand dollars.''

The court, as we have seen, directed the jury to find for the plaintiff, leaving to the jury, of course, the amount to be assessed as damages, and the argument is made that this was prejudicial error as the question whether any damages should be found was for the jury. Generally this is true, but where there is no issue of fact concerning the right of the plaintiff to recover damages in some amount the jury may be given specific directions as they were in this case.

The evidence is conclusive, and as we think uncontradicted, that the plaintiff suffered injuries that were caused solely by the negligence of Wigginton. It is perfectly clear that the street car company was not negligent in any respect.

The jury, in addition to being instructed to find for the plaintiff in such sum as would compensate her for medical attention and loss of time, were further directed to allow damages for permanent impairment of her power to earn money. And this last item of damages contemplated the allowance of what is called in cases like this compensatory damages. The allowance for medical attention and loss of time come under the head of special damages, and is distinct from the allowance of compensatory damages. In other words, compensatory damages, such as damages for permanent or partial injuries, pain and suffering and humiliation of feelings, include

one item of damages, that a plaintiff in personal injury cases may recover, and in addition thereto, there may be a recovery for special damages such as loss of time and medical expenses. Rossi v. Jewell-Jellico Coal Co., 157 Ky. 332; Dunn v. Blue Grass Realty Co., 163 Ky. 384.

It may therefore be said that in this case the jury did not in terms award any compensatory damages, and so the argument is made that the verdict violated the instructions and was against the law, but it does not follow from the fact that the jury did not, as they were directed to, find any sum in compensatory damages that the defendant may complain of this as a prejudicial error, unless there could be no finding for punitive damages in the absence of a finding for compensatory damages.

The jury were told in the instructions that they might award punitive damages "in addition to compensatory damages" and if they allowed both compensatory and punitive damages they should say in their verdict how much they found as compensatory and how much as punitive. The jury, however, did not, as we have seen, allow any compensatory damages but found punitive damages in the sum of $4,000.00. This was a case in which the jury might well have found punitive damages as the accident was caused by the wanton and reckless conduct of the driver of the automobile, and so the only question is— was it permissible for the jury to allow punitive without allowing any compensatory damages?

In the case of L. & N. Railroad Co. v. Richel, 148 Ky. 701, we had occasion to examine this question. Under the facts in that case the jury might have allowed either punitive or compensatory damages or both, and the jury being so instructed returned a verdict for punitive damages only. Quoting now from the opinion the court said:

"It is, therefore, insisted that as there was no finding of compensatory damages, the verdict of punitive damages should not be permitted to stand. In other words, it is insisted that actual damage is an essential predicate to the imposition of punitive damages. It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. Stacy v. Publishing Company, 68 Maine, 287. In our opinion, however, this view is not correct, and does not agree with the great weight of authority. The correct rule, we think, is that if a right of action exists; that is, if the plaintiff has suffered an in-

jury for which compensatory damages might be awarded, although nominal in amount, he may in a proper case recover punitive damages. Sedgwick on Damages, 8th ed., vol. 1, sec. 361; Alabama Great Southern Railroad Co. v. Sellers, 93 Alabama 9, 9 Southern 375; Hefley v. Baker 19 Kan. 11; Dosker v. Western Union Telegraph Co., 57 S. E. (S. C.) 671.''

There is of course some difference between the facts of that case and this one as well as verbal difference in the wording of the instructions, but we regard the case as furnishing controlling authority supporting the view that in any case where both compensatory and punitive damages may be allowed the jury, if the evidence justifies it, may award punitive damages ''in addition'' to compensatory damages, or may award punitive damages without allowing any compensatory damages.

The most troublesome question in this case is found in the size of the verdict. We have examined and considered with great care this feature of the case, and while reaching the conclusion that the verdict is larger than it should have been we have found ourselves unable to say that it is so excessive as to authorize a reversal.

Of course every lawyer who is at all familiar with personal injury cases understands the great difficulty in determining the amount of damages that should in fairness and reason be awarded, and this difficulty has influenced us in more than one case not to disturb the finding of damages unless it was so excessive as to appear in the language of section 340 of the Code ''to have been given under the influence of passion or prejudice;'' or in other words, to appear at first blush to be entirely disproportionate to the injury received.

Applying this rule, and we know of no other that can with propriety be looked to, we do not feel at liberty to order a new trial on this account. It is true, the jury allowed the whole sum, aside from the special damages, as punitive damages, but this is not so important if the finding is not excessive.

This was a case strongly appealing for punitive damages and the jury without stopping to separate the damages, as they might have done, concluded to put the sum allowed under the head of punitive damages, although they might well have divided it.

Looking, however, at the verdict as we find it we may repeat here what was said in L. & N. R. R. Co. v. Roth,

130 Ky. 759: "It is not practicable to say, even approximately, what amount of punitive damages a jury may assess in a case where this character of damages may be allowed. It is even more difficult of approximation and ascertainment than the correct measure of compensatory damages in personal injury cases. In the very necessity of things the amount must depend upon the facts and circumstances of each particular case. And so the amount that may be awarded as punitive damages must necessarily be left to the sound discretion of a jury, although we do not mean to hold that a jury is at liberty to award any amount it may see proper as punitive damages, or that the assessment of such damages will not be reviewed. We do not know of any general rule that can be laid down upon this point, except that the damages must not be so excessive as to indicate that the jury was influenced by passion or prejudice, and must have some reasonable relation to the injury and the cause of it, and not be disproportionate to the one or the other. . . . Applying these general rules to this case, we find that the injury was serious, and the cause such negligence as indicated a reckless and wilful disregard of human life on the part of the defendant corporations. So that it is a case calling for more than compensatory damages, and one that authorizes the infliction of exemplary damages as a punishment and, comparing the amount assessed with the injury sustained and the gross negligence that caused it, we are not perpared to say that it is so unreasonable or disproportionate to the standards by which it must be measured as to authorize us to interfere with the finding of the jury, to whose hands was committed the amount that should in reason be awarded."

Upon the whole case we find no prejudicial error and the judgment is affirmed.