## Engleman v. Caldwell and Jones.

(Decided February 16, 1932.)

24

DOOLAN & DOOLAN for appellant.

W. G. DEARING for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON— Affirming.

This appeal presents for review a trial before a jury in which a judgment was rendered in behalf of the appellees against the appellant. The verdict of the jury was $1,400 for loss of grocery business; $940 for loss of business of pressing shop; and $5,000 punitive damages.

The appellees of their own accord entered a motion for the remission of the item of $940 for loss of the business of the pressing shop. They were within their rights in entering this motion, and the court properly entered an order accordingly. Chesapeake & O. R. R. Co. v. Meyers, 150 Ky. 841, 151 S. W. 19; R. Burleigh & Sons v. Overton, 173 Ky. 70, 190 S. W. 472; Louisville Water Co. v. Scholtz, 140 Ky. 436, 131 S. W. 192; Security Benefit Assn. v. Kibby, 220 Ky. 330, 295 S. W. 164; Hickman v. Lay, 228 Ky. 656, 15 S. W. (2d) 515.

The appellant in his brief relies on alleged errors not mentioned in his motion and grounds for a new trial. It is shown by the clerk's transcript that he objected and saved exceptions to the ruling of the court to the giving of instructions 1, 2, and 3. In his brief he complains of the instructions on the measure of damages for loss of profits and punitive damages, but neither of these causes is found in his motion and grounds for a new trial.

Subsection 8 of section 340, Civil Code of Practice, has been uniformly construed by this court to mean that the grounds relied on for a new trial must be specifically set out in the motion and grounds therefor. The specific error to which the exception was taken during the trial must be mentioned therein. This construction of the Code was given it in 1868 in Slater v. Sherman, 5 Bush 206, and has since been applied in hundreds of cases and recently in the case of Brown v. Union Packing Co., 229 Ky. 198, 16 S. W. (2d) 1024, and Thompson's Admr. v. First National Bank, 234 Ky. 252, 27 S. W. (2d) 978. He sets out in his motion and grounds for a new trial, and argues, in his brief, grounds for reversal which are not

found in his bill of exceptions. He complains of improper argument of appellees' counsel to the jury in both the motion and grounds for a new trial and in his brief, but we find nowhere in the bill of exceptions a statement of the argument of which he complains. The argument has not been preserved and presented by the bill of exceptions; therefore we are precluded from considering it. Illinois Cent. Ry. Co. v. Josey's Admx., 110 Ky. 342, 61 S. W. 703, 22 Ky. Law Rep. 1795, 54 L. R. A. 78, 96 Am. St. Rep. 455; George T. Stagg Co. v. Brightwell, 92 S. W. 8, 28 Ky. Law Rep. 1220; Louisville Ry. Co. v. Gaar (Ky.), 112 S. W. 1130; Bannon v. Louisville Trust Co., 150 Ky. 401, 150 S. W. 510. The appellant insists that evidence of his financial condition was not pertinent to the issue, and therefore inadmissible. We are not required to pass on its competency for the simple reason, when the question was propounded to the witness relating to the amount of property the appellant owned in that neighborhood, the court sustained an objection and the witness was not permitted to answer it. Only two questions during the examination of the witnesses were objected and excepted to by the appellant. This was one. The other was how many tenants the appellant "had in the neighborhood." This question was permitted to be answered over the objection of appellant. This ruling of the court is not complained of in the brief of counsel. However, it may be said in passing that on the issues made in this case, and to which the evidence was directed, it was competent to show how many tenants the appellant had in the neighborhood under investigation.

To properly consider and determine other questions presented, a summary of the evidence is required.

The appellees in March and April, 1930, were engaged at No. 639 and No. 641 South Tenth street, Louisville, Ky., in "the grocery and pressing business." The appellee Caldwell conducted the pressing shop, and the appellee Jones the grocery department. The appellant's residence was across the street at No. 636 South Tenth street, about opposite their place of business. Sarah Kelly, the mother of the appellee Mary Jones, resided at 634 Tenth street, close to and adjoining a lodging house which was owned and operated by the appellant. In March, 1930, Mary Kelly complained to the appellant of the conduct of the roomers in his lodging house. Deriving no satisfaction from so doing, she complained to the chief of police of Louisville. After she did

so, it is claimed by the appellees and other witnesses that appellant immediately began to sit from day to day on his porch and to call to his tenants and others passing and to charge that appellees were "white folks niggers," "not reliable"; that their goods were "trash, refuse stuff." When customers would start into their place of business, he would tell them: "Don't get your groceries there, they have nothing in there that is any account." "Don't go in that place, that is no place for you." And to announce, "Caldwell knows nothing about pressing clothes, your clothes will be burned up if you take them in there."

The appellant notified his tenants that if they persisted in trading at the grocery store of appellees "and buying things from them they would have to move." One or two of his tenants who continued to trade with them were required by him to move. He audaciously boasted that he carried the law in his pocket, and declared that "here is the law right here," slapping his hand on his pocket; that "the court is nothing but a dollar"; and that he was going to put appellees out of business if he had to throw away a thousand dollars to do it.

At the time it is claimed appellant began this course of conduct, the appellees were paying for the use of the grocery department $22.50 per month. But on account of loss of trade because of the conduct of appellant, the appellees' landlord reduced their rent to $17.50 per month. At the beginning of appellant's conduct their profits were on an average of $20 to $25 per week, but dropped to 40 cents or 50 cents a day, resulting in their cessation of business.

The appellant's defense was a denial. The appellant strenuously urges that the verdict of the jury is flagrantly against the evidence and grossly excessive, superinduced by passion and prejudice, and so strikes the mind at first blush.

The appellees showed their net weekly profits. No evidence was offered or heard contradicting this showing. It was shown that their daily sales were reduced to 40 cents or 50 cents a day, finally resulting in a destruction of their business.

Sutherland on Damages, vol. 1 (4th Ed.), sec. 70, states the rule in this language:

"In actions for torts injurious to business the extent of the loss is provable by the same testimony

as in actions to recover for the loss of profits caused by the breach of contracts, and recovery may be had for such as is proved with reasonable certainty; it is enough to show what the profits would probably have been. Certainty is very desirable in estimating damages in all cases; and where from the nature and circumstances of the case a rule can be discovered by which adequate compensation can be accurately measured it should be applied to actions of tort as well as to those upon contract. The law however does not require impossibilities; and cannot therefore demand a higher degree of certainty than the nature of the case admits. If a regular and established business is wrongfully interrupted the damage thereto can be shown by proving the usual profits for a reasonable time anterior to the wrong complained of.''

We are not prepared to say that the verdict of the jury fixing appellees' compensatory damages indicates that it was the result of passion or prejudice or flagrantly against the weight of the evidence.

The facts appearing in the case authorized a verdict for punitive damages. The malicious and inexcusable conduct of appellant, continuously and persistently engaged in for two consecutive months, accompanied by offensive and vicious acclamations directed toward appellees and their business, resulting in their closing it, authorized the jury to find punitive damages. Wigginton's Admr. v. Rickert, 186 Ky. 650, 217 S. W. 933; Sedgwick on Damages (8th Ed.), vol. 1, sec. 361. The appellant's conduct and declarations were an invasion of appellees' rights [Superior Woolen Co. Tailors v. Samuels & Co., 219 Ky. 539, 293 S. W. 1078; Foster-Milburn Co. v. Chinn, 134 Ky. 424, 120 S. W. 364, 34 L. R. A. (N. S.) 1137, 135 Am. St. Rep. 417; Brents v. Morgan, 221 Ky. 765, 299 S. W. 967, 55 A. L. R. 964; Jones v. Herald Post Co., 230 Ky. 227, 18 S. W. (2d) 972], and not only aggravating and insulting, but were engaged in by him in utter reckless disregard of the rights of the appellees to enjoy the peaceful pursuit of their own business. Accepting the theory of the appellees and their explanation of his protracted course of conduct (and it was the province of the jury to accept it or reject it), it cannot be said that $5,000 punitive damages were ex-

cessive, considering the fact that the punitive damages were for both appellees.

The mere fact a verdict is large will not outhorize this court to set it aside unless it is so grossly excessive as to make it clear that it was the result of passion or prejudice. Green River Light & Water Co. v. Beeler, 197 Ky. 818, 248 S. W. 201. The jury may award punitive damages according to their conclusions from the whole evidence respecting the conduct and motives of the person inflicting the wanton injury. Trabue v. Mays, 3 Dana, 138, 28 Am. Dec. 61. In such cases no standard can be fixed to measure the damages resulting therefrom. Branshaw v. Berry, 2 Ky. Law Rep. 58. Where bad motive or purposeful injury is so wanton as to demand the severest punishment, and it is utterly uncertain what the result of the injury was, a verdict for the sum fixed by the jury may not be considered as excessive, only the amount fixed is the only indication of passion or prejudice on the part of the jury. Louisville Southern Ry. Co. v. Minogue, 90 Ky. 369, 14 S. W. 357, 12 Ky. Law Rep. 378, 29 Am. St. Rep. 378. The appellant is without right to complain of the effect of the influence operating on the mind of the jury, which originated or existed directly and solely from a simple narration of his wanton conduct which was the very basis of appellees' cause of action against him. A verdict so arrived at is to be regarded as the expression of an honest conclusion of the jury, and cannot be considered as the product of bias or prejudice. Especially so, when there is no indication of the presence of bias or prejudice operating on the mind of the jury, other than the mere fact that the amount fixed by the verdict is large in the estimation of interested, adverse parties.

In an action for slander which was extremely aggravated, a verdict of $8,000 damages was held by this court to be not so flagrantly excessive as to indicate passion or prejudice. Dinslor v. Fresh, 2 Ky. Op. 566. In Wigginton's Admr. v. Rickert, supra, a verdict was returned for $100 for medical services, $300 as a seamstress, and $4,000 punitive damages. This court stated that the case was one that authorized the infliction of exemplary damage as a punishment, and comparing the amount assessed with the injury sustained, it could not be said that it was so unreasonable or disproportionate by the standards by which it must be measured as to authorize this court to

interfere with the finding of the jury. Evaluating the facts and measuring them by the prevailing rule in such cases, we are not prepared to say the damages assessed by the jury are excessive.

Wherefore the judgment is affirmed.