## Drane v. Graves.
(Decided Dec. 20, 1935.)

THOMAS C. MAPOTHER for appellant.

WALTER S. LAPP for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In August, 1925, the appellee and plaintiff below,

Helen M. Graves, purchased from the appellant and defendant below, Mrs. Mary Josephine Drane, a residence house and lot on Twenty-Fourth street in Louisville, Ky., for the agreed consideration of $5,200, with a down payment of $2,700. Mrs. Graves had no property whatever at the time, and it was necessary for her to borrow the down payment, which she did, from the Liberty Insurance Bank of Louisvile, Ky., and by agreement with Mrs. Drane it was given a prior lien upon the conveyed property with the vendor holding a second one for the balance of the purchase money amounting to $2,500. It was also calculated at that time what monthly payments (to each of the lienholders) would discharge their respective debts at the end of 120 months, and which was $31.32 per month to the bank, and $29 per month to Mrs. Drane, making a total monthly payment of $60.32. Those payments were made for something more than six years, when Mrs. Graves (plaintiff herein) ceased altogether to pay either of them, nor had she kept the taxes paid on the property as she had also agreed to do in the deed Mrs. Drane executed to her.

About January 1, 1932, plaintiff and her husband vacated the property and left it unoccupied. She carried the keys to the bank, which held the first lien upon the property, and requested it to make sale of the property for the most it could obtain, of course desiring an amount that would realize her something for her equity. The bank made repeated efforts to effect a sale but was unable to do so. After the property was vacated and Mrs. Drane learned about it, and also learned that the bank had been authorized to sell it, she offered it the balance due on the bank's debt, and to assume and pay all back taxes and to cancel the balance of her indebtedness, thus relieving both Mrs. Graves and the property of any and all indebtedness whatever. Mr. Crawley, who managed that department of the bank, declined to do so, and on April 4, 1932, Mrs. Drane, the defendant herein, after having discovered that some of the doors to the building were open and entrance thereto was free to tresspassers generally, with locks off of other doors and some window lights broken out, and other evidences of depreciation to the property, filed an equity action in the Jefferson circuit court in which she made the bank and other interested parties defendant, as well as Mrs. Graves, and sought a sale of the property and an ap-

propriation of the proceeds to the satisfaction of the liens in their order of priority.

Judgment was rendered in that action in accordance with the prayer of the petition, and at the commissioner's sale the property was appraised at $2,850 and purchased by Mrs. Drane at $2,500, she being the highest and best bidder, leaving a deficit due her, after paying prior liens, of something more than $1,400, thereby demonstrating that her effort to purchase the property from the bank in satisfaction of all claims would have been much more favorable to Mrs. Graves, since it would have satisfied all of the debts against the property and would have relieved Mrs. Graves of all obligations to pay any of them.

On the day following the filing of that equity action by defendant herein (Mrs. Drane) she received a telephone message from a Mrs. Janes inquiring if the property was for rent, and stating that she (Mrs. Janes) had noticed that the property was vacant, that she had found the back door open and had gone in and inspected it, and had also learned that Mrs. Drane had the renting of it. Upon receiving that message, Mrs. Drane consulted her attorney, who perhaps erroneously advised her that under the circumstances she had the right to consent to the renting of the property rather than for it to remain vacant in its exposed condition. She thereupon informed Mrs. Janes that she could occupy the property at $25 per month, and Mrs. Janes took charge of it on that day and occupied it for a period until her monthly rentals amounted to two hundred and ninety some odd dollars.

In the meantime, and on April 14, 1932 (just nine days after Mrs. Janes moved into the property under the circumstances above outlined), plaintiff herein filed this ordinary action against defendant in the Jefferson circuit court, seeking to recover one month's rent from April 5 to May 5, 1932, and in which it was further charged that defendant had "maliciously, wantonly and wilfully, in a highhanded manner" forced her way into the house and had taken wrongful possession thereof and because of such "malicious and wilfully trespass" on her part plaintiff had been damaged in a total sum of $5,000, for which judgment was prayed against defendant. Defendant's demurrer to the petition was

overruled with exceptions, and in the first paragraph of her answer she denied the material averments of the petition and pleaded her good faith in consenting to the renting of the property and fortified it by stating the facts and circumstances under which her consent was given. She also in another paragraph pleaded that plaintiff was delinquent in the payment of city taxes on the property for the year 1928, and that it had been levied on by the proper officer according to law and sold to a man by the name of Faust; that proper report had been made of that sale, and after the expiration of two years, with no redemption, the tax receiver of the city of Louisville, in accordance with the provisions of the law, had conveyed the property to Faust, and which occurred in 1930, and that the effect of that deed was to convey plaintiff's title to the vendee in the tax deed, and that defendant herein (Mrs. Drane) after filing her equity action (and in May, 1932) purchased the tax title of Faust and was the owner of it at the time she filed her answer.

Following pleadings made the issues and upon trial the court peremptorily instructed the jury to find for plaintiff the total amount of rental that had been paid by Mrs. Janes, and then instructed the jury that if they believed the alleged trespass of defendant was committed in the manner therein described that it (the jury) might return a verdict for punitive damages. Defendant's objections to that instruction were overruled and a like exception was taken to the overruling of her prior motion for a peremptory instruction in her favor. The jury's verdict was for the entire amount of the collected rent, as peremptorily directed by the court, and in addition thereto it found in favor of plaintiff against defendant the additional sum of $1,500 which it expressly characterized as punitive damages. Defendant's motion for a new trial was overruled, and from the verdict and judgment pronounced thereon she prosecutes this appeal, insisting on a great number of grounds as constituting reversible errors, a considerable percentage of which we think are meritorious; but we will refer to and discuss only those hereinafter referred to.

The argument to the jury of counsel for plaintiff as incorporated in the bill of exceptions widely departed in a number of instances from the issues in the case and it was in many respects exceedingly inflamma-

tory and which was without support, as we conclude, from anything contained in the record. We are also convinced that the testimony in the case fell far short of developing circumstances and conditions authorizing the recovery of punitive damages, and, therefore, no instruction authorizing such recovery should have been given. Plaintiff's counsel, in his effort to sustain the court's ruling in giving that instruction, cites and relies on the cases of Weaver v. F.cke, 174 Ky. 432, 192 S. W. 515; Wiggington's Adm'r v. Rickert, 186 Ky. 650, 217 S. W. 933; Zella Mining Company v. Collins, 203 Ky. 178, 261 S. W. 1090; Engleman v. Caldwell & Jones, 243 Ky. 23, 47 S. W. (2d) 971. But an examination of them—some of which are for the recovery of damages for the infliction of personal injuries—will clearly demonstrate the wide distinction between their facts and those found in this record. The general rule allowing a recovery of such damages is thus stated in the text of 8 R. C. L. 585, sec. 132: "While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. To warrant the allowance of such damages the act complained of must not only be unlawful, but it must also partake somewhat of a criminal or wanton nature. And so it is an almost universally recognized rule that such damages may be recovered in cases, and in only such cases, where the wrongful act complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant." Four closely printed columns of citations of cases in support of that text are found in note 12 thereto, among which are a great number of domestic ones which we feel it to be unnecesary to incorporate in this opinion, since they may be found, together with a number of other foreign ones, by a reference to that text.

In this case Mrs. Drane had consulted her attorney as to whether or not she should consent for a tenant to occupy the house. She was informed that she had the right to do so. The security for her debt (the property in lien and which was inferior to the bank's debt as it also was to the amount of unpaid taxes) was being rapidly depreciated because of the abandonment of the

property in a state of considerable disrepair, and with it exposed to the depredation of all trespassers who saw proper to enter it. The renting of it in such circumstances would not only redound to the benefit of plaintiff, as well as her creditors, including defendant, by the collection of the rent reserved, but it would also protect the property from its exposed condition to continuous trespasses. The action of defendant in so consenting was in effect no more than the court would have been authorized to have done by the appointment of a receiver upon a motion made for that purpose in defendant's then pending equity action. We have searched the record in vain to justify any such venal motives on the part of defendant as counsel so luridly describes as motivating her actions herein. Defendant, in giving her consent to the renting of the property to Mrs. Janes, did so intentionally, and with a willingness that it might be done, but in that act we find none of the elements calling for the infliction of punitive damages, such as, wantonness, malice, oppression, brutality, insult, etc.

It will also be perceived that the court peremptorily instructed the jury to return a verdict in favor of plaintiff for the amount of the rent paid by Mrs. Janes, when no pleading in the case asked for any amount of that rent except $25 in payment of the first month's occupancy. We need not further comment on the error of the court in so doing, and which leaves for consideration the only remaining question that we deem proper to refer to and discuss, and which is, the effect of the tax receiver's deed executed to Faust in 1930 and his later conveying his claim to defendant herein.

It is conceded by plaintiff's counsel that a tax deed is not only presumptive evidence of regularity and complies with the applicable law, but also that its effect, in sales of real estate in the collection of taxes due the commonwealth and counties, is to convey the taxpayer's title to the tax sale purchaser under the provisions of section 4154 of our present statutes. Section 3004, which is a part of the charter of cities of the first class, to which the city of Louisville belongs, deals with the same question as applied to sales of real estate in the collection of taxes due first-class cities, and the relevant portion of it is: "If the land be not redeemed within two years from the date of sale, a fee simple

title shall vest absolutely in the purchaser, subject only to state taxes. Thereupon the tax receiver then in office shall convey the property by deed to the purchaser who shall then be entitled to possession of the property, and have the right to recover same by suit or motion, as may be found most appropriate; provided, that it shall be the duty of a purchaser other than the city, to pay all later tax bills owing to the city, with interest, as provided in sec. 2998, which were assessed against that property after the assessment of the tax for which it was sold, and the tax receiver shall not convey the property to such a purchaser until all such tax bills have been paid. Such deed shall be prima facie evidence of the regularity of the sale, and of all prior proceedings and title in the person to whom the deed has been executed.''

Faust complied with the provisions of that section before he obtained his tax deed, and unless provisions of other statutes prescribe to the contrary, he thereby obtained not only the title to the property as against Mrs. Graves, but also the right to the possession of it as against her. But counsel insists that a provision found in section 3001 of the same statutes, and being a part of the same city charter, qualifies the effect of section 3004 so as to give the tax purchaser after obtaining his deed only a lien upon the property purchased by him when there are other prior liens against it of record and that contention is based on this excerpt from section 3001—''except that where there are bona fide mortgages or vendor's liens of record on real estate, only liens now given by law shall be enforced by such sale.'' It is contended by plaintiff's counsel that the excerpt so made from that section has the effect of merely subrogating the purchaser to the right of the city and gives him only a lien upon the property. Clearly, the Legislature did not intend to repeal in toto section 3004 by the adoption of that excerpt as a part of section 3001, and the connection in which it is employed clearly indicates that no such purpose was entertained. On the contrary, the excerpt was really surplusage, since a sale of property for the purpose of enforcing tax liens was never regarded as a proper proceeding for the enforcement of prior contractual liens upon the same property, and the purchaser at the sale of property so encumbered took it subject to the lien of such encumbrance, but with a prior lien for the amount he had paid with

interest penalties, etc. So far, however, as the owners of the property were concerned, even in that case (and without exceptions) the latter's title would be conveyed and the excerpt was but an express incorporation in the statute of that prior universally applied principle of law. The framers of the statute evidently wanted it distinctly understood that such prior existing liens could and would not be enforced in the proceedings provided for the sale of property for taxes.

However, at the time defendant consented for the property to be rented she had not obtained a deed from Faust, but did do so in about one month thereafter. If, therefore, it should be said that she had not acquired the right to the possession of the property on the 14th day of April when plaintiff filed this action, her right thereto accrued within at least a month thereafter, and, therefore, in no event could plaintiff recover for exceeding one month of her alleged deprivation of possession. But even that right is dependent upon the further one, that she was *in possession* at the time she did file her action, which, if true, her possession could be only a constructive one by virtue of her *ownership* of the *title* to the property. But, as we have seen, Faust was the title holder at that time and which he within sixty days conveyed to defendant herein. Plaintiff was not in the actual possession of the property at the time she filed this action, and which her pleadings admit. Therefore, if she was in possession at all, it was only a constructive one by virtue of her title as owner of the property. She did not own it at that time, as we have pointed out, and for which reason the record does not sustain her right to maintain the action at all.

But it is insisted that the principles announced in the case of Kirk v. Cassady, 217 Ky. 87, 288 S. W. 1045, 1046, are applicable to this one. The opinion therein recognized the universal doctrine that "a mere wrongdoer cannot plead title in a third person, when sued for trespass by the person *lawfully in possession.*" (Our italics.) The trouble with the application of that principle in this case is, that plaintiff was not at the time she filed this action "lawfully in possession." Trespass, as every lawyer knows, is an injury to possession, and an action therefor may be maintained by one lawfully in possession, although owning no title. In such a case an action lies in favor of the lawful possessor

against the one guilty of the ouster, and necessarily proof of title in an outstanding third party would create no defense, provided plaintiff's possession was lawful. But the very question in this case is, whether or not plaintiff was "in lawful possession." We have seen that she was not, and that she may not rely on constructive possession as an outgrowth of ownership of title, in the absence of actual possession, since her title had already been wrested from her by the execution of the tax deed to Faust. Under this view of the case, it necessarily follows that the court erred in overruling defendant's motion for a peremptory instruction in her favor.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.

The whole court sitting.