## Harrison et al. v. Martin et al.

(Decided Feb. 25, 1938.)

J. R. LLEWELLYN for appellant.

WILLIAM LEWIS & SON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

L. M. Harrison, one of the appellants and a defend-

ant below, was in 1934 (and perhaps yet is) the owner of a considerable tract of land in Jackson county, underlaid (at least in portions thereof) with coal. Some time prior to July 1, 1934, he had opened, for wagon mine purposes, five entries on his land, and had operated them to some extent. He entered into a written lease with one Wash Hensley, whereby, on stipulated terms, the latter took over the mines and agreed to operate them as therein specified, paying the lessor or owner an agreed royalty. That contract was for only one year, beginning July 1, 1934, and ending on the same date in July, 1935. Hensley, who took possession of the mines at the beginning of his lease, in a few months thereafter sublet or assigned to Oss Martin, one of the appellees and a plaintiff below, the right to take coal from two of the entries that had been leased by him, and Martin with his sons and other help (who are the other appellees and plaintiffs below) began the operation of the two entries covered by his contract with Hensley. Shortly thereafter and before the beginning of 1935, Hensley died, and it seems that Harrison concluded that his death terminated his lease, and likewise terminated all mining rights that he may have attempted to confer on others, including Oss Martin. But it seems that neither he nor his attorney took cognizance of section 2292 of our present Statutes (Baldwin's 1936 Revision of Carroll's Kentucky Statutes), which prohibits the assignment or transfer of any real estate lease when it is for a period less than two years, and that if such assignment or transfer of such lease (for a period less than two years) is made the transfer will operate as a forfeiture of the lease if it is done without the written consent of the owner or lessor.

Operating under the conception that Hensley's death terminated the lease, Harrison re-leased the property for the same purposes to the other appellants and defendants below, Roscoe Mink and Frank Lefler. They then filed an equity action in the Jackson circuit court enjoining Martin from operating the two entries—the right to which he claimed under assignment from Wash Hensley before the latter's death—and in their petition they made as defendants Oss Martin and his four sons. They also obtained a temporary restraining order from the clerk upon the filing of the petition, and executed bond as required by law, with Harrison as their bonds-

man; but which is more or less awkwardly drawn, in that it attempts "to satisfy so much of the judgment in the Jackson circuit court in favor of Oss Martin, Bob Martin, Bige Martin, Ed Martin, Will Martin against said Roscoe Mink and Frank Lefler as is enjoined in this action, to the extent that the injunction may be dissolved," etc. That stipulation was incorporated in the bond, notwithstanding no such judgment had ever been rendered as therein indicated. But the bond also stipulated that the obligors therein agreed to pay defendants in that action "such costs and damages as may be awarded to the defendants in consequence of the injunction." That action was filed on January 1, 1935, and the temporary restraining order was then and there issued by the clerk. It will be observed that the rights claimed by Oss Martin had yet six months to run, and the restraining order was not dissolved until much later. He was thereby deprived of six months' operation of the two mine entries, the right to do which he had obtained from Hensley, as he claimed. Still later, the case was prepared and submitted to the court, when it dismissed the petition of Mink and Lefler, and which, of course, had the effect of discharging the restraining order.

This action was then filed by the defendants in the injunction action against the plaintiffs therein, and their surety, Harrison, to recover damages for the wrongful obtention of the restraining order whereby Oss Martin was deprived of the right to operate the two entries, supra, for the last six months of his contract. The answer, besides some denials made therein, attempted to assert a counterclaim growing out of alleged improper mining by Martin while operating the property and before he was enjoined from doing so. But the court sustained a demurrer to that paragraph upon the ground that the matters therein contained were not properly assertable as a counterclaim in an action on the injunction bond. The jury, impaneled to try the case under the instructions submitted to it by the court, returned a verdict in favor of plaintiffs for the sum of $500, upon which judgment was rendered. Defendants' motion for a new trial was overruled, and they prosecute this appeal.

Four grounds were relied upon in the motion for a new trial, which were: (1) The admission of incompe-

tent evidence by plaintiffs to which defendants objected; (2) failure of the court to peremptorily instruct the jury to return a verdict for defendants; (3) the verdict is palpably against the evidence, and (4) the verdict is excessive. But in the brief of attorney for appellants filed in this court only two contentions are made, and which are: (a) That the court erred in disallowing defendants' alleged counterclaim, and (b) that the court should have submitted to the jury defendants' duty to minimize the damages by whatever amount they did earn, or could have earned, by the exercise of ordinary diligence during the period of the continuance of the restraining order issued in the injunction suit, wherein the bond sued on was executed.

It will be perceived that neither of those grounds so argued and urged in brief is contained in the motion for a new trial. But, if they had been, then we are convinced that neither of them is meritorious. The only cases cited in support of argued ground (a) are Tinsley v. Tinsley, 15 B. Mon. 454, and Ford Lumber & Manufacturing Company v. McQueen, 14 Ky. Law Rep. 521. But neither of them is applicable to the facts of this case, which, it will be remembered, is an action on an injunction bond issued in a case in which Mink and Lefler were the sole plaintiffs, neither of whom was the owner of the leased land, nor were they connected in any manner with the rights attempted to be asserted in the counterclaim, which, if they existed at all, arose from the violations of a lease given by the owner of the land, who was an entire stranger to the injunction suit. It is therefore clear that the recovery sought by the pleaded counterclaim did not arise "out of the contract, or transactions, stated in the petition (in the instant case) as the foundation of the plaintiff's counterclaim," nor are they "connected with the subject of the action," which is exclusively upon the injunction bond. The counterclaim seeks recovery of damages sustained by the lessor for improper mining, an injury exclusively to the real estate, and in which the Martins have no interest. The McQueen Case has no relevancy whatever to the issue involved, and it is not an opinion by this court, but only one by our old and now extinct superior court. The action therein was not upon an injunction bond, and the question now under consideration was not in the least involved.

In support of argued ground (b) we are cited to the cases of Citizens' Trust & Guaranty Company v. Ohio Valley Tie Company, 138 Ky. 421, 128 S. W. 317, 319; and Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S. W. (2d) 1000. The cited case reported in 138 Kentucky was where the plaintiff in the action on an injunction bond had been deprived by the injunction granted in a prior action from carrying out a contract, whereby it acquired the right to cut and remove timber, and the damages sought to be recovered in the action on the injunction bond did not consist of profits that could and would have been realized if the injunction had not issued and the defendant therein had been permitted to perform his contract, which the injunction deprived him from doing. It was not a case where the damages consisted in loss of profits, as is true in this case, but where the damages were made up of loss sustained by idle teams and other expenses growing out of the deprivation brought about by the injunction; and in the case we said: "It was incumbent on the plaintiff to use ordinary care to give its men and teams employment, and in so far as it might have lessened the loss by ordinary care, and failed to do so, no recovery may be had."

This action, it will be observed, involves no contract for personal services. On the contrary, the contract of defendant Oss Martin conferred upon him the right to make a profit out of the performance thereof, and the injunction deprived him of doing so. He was not compelled, under the rule contended for, to get out and obtain a similar mine during the period that the bond suspended him from operating the ones in contest. For aught that appears, his business may have been to operate such mines in great numbers, from each of which he might realize a profit, and it surely would not be contended that if the injunction deprived him of the benefit of any one of them, then the rule under consideration would compel him to get out and supply that one by obtaining another to take its place. The 138 Kentucky Case does not support that conclusion or declare a different principle.

On the contrary, in the later case of Harness v. Kentucky Fluor Spar Company, 149 Ky. 65, 147 S. W. 934, 935, Ann. Cas. 1914A, 803, the identical question, in substance, was presented, wherein a mining contract

was enjoined, which was later dissolved, and the action was a suit on the injunction bond. The principle of minimizing the damages was insisted upon by the defendants in the action, but it was denied, and we said in the opinion that: "This is not a contract for personal services at fixed wages for a specified term; on the contrary, it is a contract to mine an unascertained amount of spar at an agreed price of $3 per ton." Therefore, the rule requiring defendants to minimize the damages was held not to be applicable, and the trial court did not err in denying it. See, also, the later domestic cases to the same effect of R. Burleigh & Sons v. Overton, 173 Ky. 70, 190 S. W. 472, and Gaffney v. Switow, 211 Ky. 232, 277 S. W. 453. The two latter ones approve the principle announced in the Harness Case, supra, and the principle upheld in all of them is approved by the text in 8 R. C. L. 445, sec. 15, and Annotations in 81 A. L. R. 282.

Since the principle is not applicable to the facts in the instant case, we are not called upon to determine whether or not it is the plaintiff's duty in such actions where the principle is applicable to allege and prove his earnings in an effort to minimize the damages, or his inability to earn any amount; or whether it is the duty of the defendant in such actions to present the question defensively by his pleadings. The facts in this case, however, are that neither litigant mentioned the question, in either their pleadings or proof.

From what we have said, it is clear that neither of the argued defenses (a) and (b) is available—first, because neither of the questions thereby attempted to be made was relied on in the motion for new trial; and secondly, because they would not apply even if they had been so relied on. Since none of the grounds incorporated in the motion for a new trial are urged on this appeal, they will be considered as abandoned, although it might not be amiss to state that our examination of the record discloses that they are each unfounded.

Wherefore, for the reasons stated, the judgment is affirmed; the whole court sitting.